The next matter is U.S. v. Demartini. The next matter is U.S. v. Demartini. May it please the court, my name is Lisa Van Ho, and I represent the appellant Rick Demartini. I'd like to reserve three minutes for rebuttal, please. One of the first arguments, I mean, your first argument is the 404B error argument, but even setting that aside, and that's a fairly tough one normally to prevail on from your, you always say that you can justify 404B with almost anything else that you balance out against it, but here, the thing that just hits me is, wasn't the door opened for all of this information relating to the other charges by Maddox's testimony and by the testimony of Demartini himself? No, Your Honor, it was not. What was asked of Mr. Maddox, who was Mr. Demartini's lawyer on direct, was quite simply asked to give context to the events in this particular case. In this case, the defense focused on Mr. Demartini's role as a DEA cooperator. Well, what the Demartini's counsel got from Maddox was that in the summer of 2003, Maddox was representing Demartini on state criminal charges, and that was the reason that they approached the DEA. Then the governor gets up on cross and asks what's going on about that, and got a lot of evidence, and then on redirect, Demartini's counsel questioned Maddox about the state charges at length, going so far as to produce the receipt that Demartini was accused of presenting to the police to exculpate himself in regard to these other charges. Yes, Your Honor. Your Honor, I believe that the question about whether or not a door is opened really focuses on who first elicits the information. Here, the information was elicited for the first time on the cross-examination of Maddox. On what you do for the government, and it comes out on direct examination from, you know, you weren't trial counsel, were you? I was trial counsel, Your Honor. That's different from you. You get information that in the summer of 2003, you, or I'm sorry, Maddox was representing your client on state criminal charges. What would you do if you were in the government? You'd have to talk, ask what about that. Well, I think that this issue of waiver, this issue of opening the door, really comes from the Supreme Court case in Oler, and what you have to bear in mind is in Oler was a 609 case, so certainly when a defense counsel asks a witness, and in that case in Oler obviously it would have been the defendant, about a criminal conviction, clearly asking about a criminal conviction in the context of 609 opens the door because that's, for impeachment purposes, the government would then be allowed to ask very specific questions, what that conviction was, and so forth, and really not get into the details. This is 404B. Why is it different than ever? It's an attorney basis, but it just seems like no matter what happens on 404B, you've got a serious 611 problem. Well, I think with respect to the, are you referring to the cross-examination or the direct examination of Mr. DiMartini? Both Maddox and then your examination of DiMartini. He testified that he moved to Alaska because, quote, everybody, close quote, in his community was talking about his pending charges. At that point, I don't think that we can look at Mr. DiMartini's testimony in isolation. The question about whether or not a door is open really has to focus on when the information first came out, and it's the appellant's position that asking simply if he had a pending criminal matter doesn't open the door. The purpose for that was to give context to the fact that then he sat down and talked to the DEA. Isn't the simple sum and substance here is that you had to take a risk if you were going to put the lawyer, the Minnesota lawyer, on at all, that the details of the Minnesota lumber theft charge and the receipt offered as a kind of alibi were going to come out. And there's no way you can separate the part of the representation that had to do with defending against the lumber theft charges from the part of the representation in the very same state by the same lawyer of trying to bargain with DEA to get credit on a sentence or get a charge reduced or dropped. The two things are totally intertwined. So it seemed to me you were in the situation where you had to decide whether the value of the Maddox testimony justified taking the risk, and you made a litigator's judgment on that. I don't question it, but then you have to live with what the outcome of that is here that the details of the charge came out. Respectfully, I disagree. In those cases where the litigator is making a tactical decision... Actually, we were trying to compliment you. You were trying to do your job, and you were saying, look, how do I preempt this information getting out? It's a calculated decision. There's a very plausible reason for exactly what you did, but you do have to live with the consequences of it. Respectfully, preemptively introducing evidence in a 4 or 4B context would have been to ask the details of the underlying charge. The mere fact that someone has a charge or has been accused of a wrongdoing isn't 4 or 4B evidence. I don't get that distinction at all. You're saying a charge is not 4 or 4B, but the substance of the charge. You've got to help me with that. The fact of the charge being 4 or 4B. First of all, it was an allegation. It was ultimately a dismissed complaint against Mr. Then the details of that allegation are just more of the allegations. They're both allegations. The charge, not even used to a conviction, as well as the details of that charge are all allegations. What was asked of the attorney was merely, did you represent him on a criminal charge? In the cases where people open the door, in Oler, in the unpublished opinion in Lackey cited by the government, in those cases, the details were brought out to take the sting out of the facts. In this case... The operative analytical framework is still 4 or 4B. I'm not certain I understand what you're saying. You're saying that if you introduce the fact of a pending charge, that's not 4 or 4B, but if you then get into the details of the charge, that becomes 4 or 4B. I'm certain that if you ever have a situation where you're representing a client, and the government just introduces the fact of a pending criminal charge against your client, they're going to be justifiably so all over the judge saying, objection, objection, 4 or 4B, part of that act, it can't come in absent, motive, intent, design, that kind of thing, which is 4 or 4B. I believe that the mention that someone has a criminal matter pending, end of question, you have a criminal matter pending unrelated to this case, wouldn't be 4 or 4B. My objection would be that that's irrelevant. Whether or not someone has a charge which isn't identified is irrelevant. It was relevant here because it provided the context for the cooperation. The substance was not gotten into on the direct examination, so there was no preemption. I didn't take the sting out of any facts. I didn't get into any facts.  Or whether or not the rationale in Oler will apply in a 4 or 4B context because at least one panel in this district in the Lackey decision expressed reluctance to extend a 609 analysis to 4 or 4B. First of all, it's against the principles of stare decisis. The case should be limited to its holding, which was 609. But more importantly, there is a distinction between 4 or 4B evidence and what the purpose of that rule is, and 609 evidence and the purpose of that. 609 really goes to credibility. 4 or 4B is a substantive piece of evidence that goes to a defendant's guilt. And really then to extend the holding of Oler, which really went against what was commonly accepted in the scholarship, would be that when you introduce something on direct, you don't waive. So to extend what really is construed as an exception to a basic rule to the 4 or 4B context is beginning to interfere with the defendant's right to present a defense. And I think that the distinction... But Oler does do that. Oler clearly interferes. That was the intention in Oler. It does clearly interfere with the defendant's right to put on his or her own defense. But the evidence that was in issue and the decision that had to be made by both the government attorney and the defense attorney in Oler had to do with something that went only to impeachment. In this case, this evidence was going to an element of the offense, and it was substantive evidence, and I believe that... How is it an element of the offense? Oh, the intent. It was going to his knowledge. And I believe that Oler shouldn't be extended beyond its facts. But in the first instance, the argument is, and I appreciate that the court may have some problem with this, is that by mentioning the mere fact that a criminal charge exists doesn't open the door to 4 or 4B, because 4 or 4B has to do with acts. But that was such an important response to the government that they made that in their answer. I don't think you got a reply brief, did you? No, no, Your Honor. Doesn't that demand a response? I don't believe it does demand a response because I believe that in the government's brief... I mean, certainly the court would like a brief under Rule 28, one could be submitted. The problem, to the extent there is a problem that the government has, is that the judge talked about intent and knowledge, when perhaps what the judge should have talked about was purpose. It's a very low threshold to introduce under 4 or 4B for the purpose. But that's maybe minor, but they're also saying it doesn't make any difference. Even if we were to lose on that, we win on 611. And I think that demands a response. Your Honor, if you would like, I could submit a Rule 28 check. You're doing it today, but I mean... I think that the facts speak for themselves, that the mere fact that you have a conviction is not a prior bad act of... I mean, I'm sorry, an accusation pending against you is not a prior bad act in and of itself. It's a procedural fact that gave context. I think also the government is also, and I'd like to address this as well, suggesting that the standard of review here is plain error and not an abuse of discretion. Well, why would it not be plain error? The government's argument is that it's plain error because the contemporaneous objection was not lodged. Your Honor, did you not object? You got back up on redirecting and, depending on how you look at it, dealt with it more or dug a hole deeper. Again... You have to make split-second decisions, but you made a decision not to object. You made a decision to get into it further. How can we say here that that isn't a plain error analysis? Because I believe that the purpose behind Rule 103 was clearly served in this case as the values of that rule that's reflected in Rule 102. Rule 103 requires a contemporaneous objection if the eliminating ruling is not definitive. Here, the judge said it was a preliminary ruling. This matter was briefed. The court, at length... It would have seemed you would have jumped up and said, Wait a minute, Your Honor, I didn't go that far. I didn't open any door here. And also a 404 objection. And stop it at that. And then have a sidebar in which you go up and say, Remember what we talked about beforehand? I mean, what you did was you put the judge in a position where it was perceived that there needed to be a jury instruction to deal with this whole issue now. Your Honor, I believe that after Mr. DiMartini's testimony was concluded, the court revisited the 404B ruling that's on page 496 of the appendix. And there, the court indicated it was a definitive ruling. And that she had decided the 404B information comes in. Now, the purpose behind Rule 103 is really, in the first instance, to give the trial court notice and an opportunity to rule, to correct any errors, to get it right the first time, so to speak. It's also to allow the parties to advance arguments that may, in fact, be meritorious. All that happened here. It's also to give an appellate record. There's a clear appellate record. The argument was briefed. It was a motion eliminated by the government. Before you say that dumb question, why didn't you object? Why I didn't object is because I believe that the court had decided that the 404B evidence was coming in. But that was all the more reason you would object and then have a sidebar and say, I just remind you, this is what we've agreed to before. This is what the court's ruled. What's going on here? Well, the rule was against me in the first instance. At the eliminate hearing, the court ruled that the 404B evidence could come in. Perhaps there was any number of acts that the government sought to introduce under Rule 404B. With respect to this theft of lumber from the home improvement store, the eliminate ruling was against me. She did characterize it as a preliminary ruling, but the ruling was certainly against me. And so it was my understanding at the time that the cross-examination began that the ruling was against me. But even there, what you might have done is just say, just for the record, I object. I realize that there has been a ruling against me in the eliminate prior to this, but I want to preserve it. In hindsight, certainly, Your Honor, there should have been a contemporaneous objection so that the matter would be clear. But I believe that the court cleared that up when the court characterized her ruling as a definitive ruling after Mr. DiMartini's testimony. And the court does not make mention of opening the door. She said the information, the evidence presented, fits her analysis under Rule 404B. And so I think that to object contemporaneously, which perhaps in hindsight, well, certainly in hindsight, would have made the issue clearer, I think it would have been a pointless formality. And that kind of strict adherence to the rule really goes against the purpose of the rule, which is to give the court the opportunity to notice the rule and to give the parties the same and to give this court an appellate record. And I see that my time is up. Okay, thank you. Thank you. I'm going to reserve some time if I can. Yes, sir. May it please the court, Eric Hasso, assistant United States attorney on behalf of the United States. Indeed, the judge did make a preliminary ruling, as Ms. Van Ho points out. But again, it was preliminary, and the judge indicated at the time she made that ruling before the trial that, well, let's see how things play out. I think that... How do we understand this? Although the judge here did do what I very rarely see, and we always say the judge should do, and that is doing on-the-record inquiring, balancing, a very good job of that, as I say. Maybe it's the first time I've ever seen it, even though we say to judges that you've got to do that. But other than gilding the lily, and I know you make the argument with the mantra of plan, design, intent, under 4.4b, but what relevance does the pending charge of a theft of lumber and a receipt that was introduced... Have to do with an airplane. With an airplane, especially given this evidence. I mean, it wasn't like he came in with a receipt for the airplane. And it just seems to me one of those things that we see very often where there's an attempt to gild the lily comes very, very close to the line. It's just unnecessary. This is stuff that he did not need. It does not mean it's erroneous to let it in. But it's certainly stuff that the trial would have been fairer, just speaking from my own perspective, had it not come in. Why put it in other than, as Judge Becker said, in my participation, Bingman-Sawyer, the protecting village? The prosecutor, when asked about what it was always going to be, the mantra of 4.4b, plan, intent, design, et cetera, et cetera, et cetera. But really what's going on here is an attempt to throw a little bit of mud in the Judge Becker defendant's shoulders. Your Honor, with respect, I believe that the facts that was proffered as central to the defense in this case, the facts that he purportedly received from some mysterious Alaskan drug dealer that said go repossess this plane, was, in a sense, a receipt for the plane. It was very much on all fours with the unique excuse that he, or the unique evidence that the government submits, what he fabricated in the context of the lumber case. The fact that there was another matter that had him engage a lawyer and go to the DEA with a proposal is one thing. But then to say, and guess what, y'all need to know just exactly what was going on here. He was stealing lumber. He was basically ostracized from his community. He moved to Alaska. The only possible reason for that could be, I just want to show he's a bad dude. Your Honor, all of that information about his going to Alaska, the reasons he was ostracized, he was losing business, because he was under the cloud of these charges came out. But there was something against him that caused him to move to Alaska. That's all the jury needs to know. Indeed, Your Honor. Back to Judge McKee's point. It's like, oh boy, I've got something here, and now I can really show he's a bad person. Well, Your Honor, there are many, many cases where with far less similarity, I would submit, to the very unique, and I hasten to add, Your Honor. You don't say very unique. That is good. There's not a signature crime here. I understand that, Your Honor, but in a sense it goes to the plan element or the plan prong of 404B, which is that when this individual, in certain circumstances, is found in possession or is under suspicion of being in possession of stolen property, he fabricates, as it were, a receipt. In the first instance, it was a receipt, indeed, that he got his wife to get for the lumber. And in this instance, it was a document. The government, I believe, put forth evidence to show, circumstantially, it was created after the fact to justify. That's all you need to do. You can show the facts as a fake and a fraud. You seem to be pretty convincingly. You show the facts couldn't possibly have been relied upon by him because at the time he waltzed in and took the plane, the facts hadn't even existed. He came in with the facts later on for you, ladies and gentlemen of the jury, to throw you off the trail. And by the way, you've done it before. Here's this letter. Let's show you what a bad guy you are. And just to compound it, rather than talking about purpose under 404B, the judge talks about knowledge and intent. That's a brawl. Well, Your Honor, I would note that in cases where an element that the government is required to prove is knowledge, as is the case in an interstate transportation stolen property case. How stealing lumber affects knowledge with regard to the stealing of a plane? It has to do with a person's knowledge that he is in possession of something that is stolen property. It has to do with rebutting. Other than the fact that the guy's a thief, how does A relate to B? It has to do, Your Honor, with the fact that when an innocent explanation is proffered for the possession of stolen property, that in many, many cases, as I've cited in my brief, the courts have held that it is appropriate, never mind the manufacture of some false document, as was in this case, which I would submit is a very limited subset of these types of 404B pieces of evidence, but rather wholesale, allowing evidence of prior accusations and prior convictions of possession of stolen property to demonstrate that it's sort of like a notice, that once you've done it before, been accused of it before, you're, in a sense, from an evidentiary perspective, held to a higher standard when you possess stolen property. So if you've possessed stolen property in the past, been accused of it, been convicted of it, then in the current circumstance, to say, I didn't know, and I have an innocent explanation for the possession of stolen property, that evidence is admissible under 404B of the prior act. But you've still got to prove that the plane which was taken to the East Coast and taken to the Midwest was stolen. The person knew it. What does that have to do with somebody being accused in Minnesota of having taken lumber? Well, Your Honor, again, I would note... It is somewhat attenuated from the... Skip the somewhat, but go ahead. Okay. It is attenuated, I'll concede. But, again, what is clear in the record and what the judge very carefully instructed the jury about was that this was not really even admitted for the purpose, and the government didn't seek to admit it, for the purpose of he's accused of having stolen lumber. That's the context of the accusation. But that, again, he manufactured a piece of paper to explain away his possession of stolen lumber, to bolster his innocent explanation. That is a very unique and discreet piece of evidence, and the judge instructed the jury that it's not just the stolen lumber, it's this... The way he did it, a distinctive method, I believe, is the term that the judge used in instructing the jury, and it is inappropriate for you to consider that receipt and the surrounding circumstances in any other context. I would also add, if I may, Your Honor, that this defendant was sentenced under criminal history category 5, and the sentencing transcript indicates that all of these priors were for theft and other property crimes. I don't want you in the brief to tell us what a bad guy he is also. There's footnotes in the brief, which I wanted to ask about. I don't know why that's necessary. You occasionally see it. Maybe there's an appellate forum for it. Maybe there is. It's just unnecessary in the brief to tell us what a bad guy he is. Well, I will be mindful of that in the future, Your Honor, of course. I've heard that one before. You passed that call to the office about it, and that's exactly what I was told by someone hired by the food chain, and you still see it happening. I will bring it up the food chain, Your Honor. In fact, on numerous public cases, he's been arrested and charged by Minnesota authorities with crimes related to theft. The point of that, really, Your Honor, was not simply just to dirty up the defendant. It was to demonstrate that the government did not seek to wholesale, to quote Huddleston, parade a litany of potential prejudicial similar acts past the jury. There were certainly a parade ready to go because this defendant had a long history of similar bad acts. And, indeed, the judge in this case denied the government's request under 440 to bring in evidence, which, frankly, would have been at least atmospherically similar to the plaintiff. You can't kind of pat yourself on the back for not leading the parade when you try to lead the parade, but the judge never. I understand, Your Honor, but the point I'm making is that it just demonstrates that this was a very limited, focused piece of evidence that went straight to the heart of the defense's proffered innocent explanation for his possession of the airplane. Let me help with the PTA lock. I understand what the experts said, but I don't quite understand why that evidence about the PTA locking system was relevant or necessary. Because he didn't try to pick the lock. The key was under the tire. Well, there is evidence that he attempted to pick the lock. There were scratch marks on the door. Indeed. But he had the key. Was it a separate key to the door to run for the ignition? I don't believe so, Your Honor, but I'm not sure if that's in the record. Then why would it be relevant? It's relevant because, again, it goes to the defendant's credibility as to his explanation for how he took the airplane, which, again, was that he was directed by this drug dealer in Alaska to... There's no issue. He did have the key, right? No, I don't believe so, Your Honor. The key, I'm not sure if it's reflected in the record, but the key certainly is not in evidence and was never retrieved in the search. But you're right, that was the defense testimony. The key was under the tire. I wondered how he left the plane empty. I couldn't figure out how he could get it in the tire. Very carefully, I would say. No, there was no key, so it was a question of how this individual did get the plane. And I believe, if I'm not mistaken, that there was cross-examination of the defense by the government, the defendant by the government about that issue. So that certainly was relevant, at a minimum, to the case, the expert's testimony in that regard. There's no further questions, Your Honor. I would rest on my brief. Thank you. If I could just return briefly to the 404B issue. The government has argued that there is a parallel between the receipt provided in the Rumberg case and the facts in the plane case. And I submit that that parallel fails because the receipt, so that it's clear, it's in the record, the receipt was not manufactured. That is illegal. It is a legitimate receipt that his wife obtained from the Home Depot, from the Menards, excuse me, from the Home Depot's competitor. And that is a real receipt. And so that perhaps there is a situation which would approach M.O. or a signature crime where someone was actually creating documents, as was the allegation here that Mr. DiMartini created this fax. It was fake, to explain his... Even if you're right, why isn't it... I mean, I'm not a big fan of harmless error. But if you're right about that, why wouldn't it be harmless error? You've got this guy flying the plane all around the continent of the United States, even up into Canada. It's clear that he was the one who flew it. The only issue really is whether or not he knew the plane was stolen. Circumstantially. Isn't the evidence pretty compelling that he did know the plane, that he had no right to take the plane? He never apparently tried to... I mean, to repossess a plane, to repossess a car, repossess a truck, and then not take it back to the creditor or the person who you're repossessing it for, but kind of hang on to it and bop around the lower 48 for a while. It doesn't make a lot of sense. The expenses are not coming from the person you're repossessing it for, but from your father-in-law's credit card to put the gas in the plane, and you land it in your backyard, as opposed to taking it back to the person you're repossessing it for. Isn't the evidence here pretty compelling that he had no belief at all that he thought he was doing anything other than stealing a plane? I've got to tell you, it's one of the most bizarre cases. About 11 years of presiding over criminal trials and then 13 years here reading about criminal trials, this may be the most bizarre theft I've ever seen in my entire life. It is weird. It was certainly an interesting case. When you look at the context of the defense, those things don't seem as glaring as Your Honor has portrayed them. Specifically, here's a person who the testimony is he went to his state lawyer and said, I just got some information about some drug smuggling between Alaska and Minnesota. Can this help me because I'm in trouble because I've been charged with various theft offenses including the lumber case. So he went with his lawyer to this proffer, and he left that proffer, and the lawyer testified similarly to the defendant with the understanding that he was to ingratiate himself. He was to get in with and to make friends with the targets of this potential investigation. But that's my point. I would imagine the targets of this investigation are pretty dangerous folks. So I wouldn't be that anxious if I were looking for somebody ingratiating myself into the good graces of somebody who's a pretty dangerous dude to go take his airplane and bop him around Minnesota and Canada and just kind of have a good time with it. I don't believe that the facts of the case are that he was taking the airplane of the target of the investigation, but rather in the record, he received a call from the target of the investigation who said, I want you to repossess. I need some help. We're going to get to that drug stuff later, but in the meanwhile, would you help me with the repossession? I'll give you some instructions. And so under that context, when you're dealing with someone who obviously might not be following a repossession the same way that the expert would have because he's not working for a bank, and then you're told by the DEA that you're supposed to ingratiate yourself and kind of get into this person's confidence, that when you look in that setting, I don't believe the evidence is overwhelming. And the fact that he is, to a certain extent, there's evidence that he told various people that this is my plane, I bought a new plane, and he was acting in a way that would one could infer overshadow. He's not going to tell them, geez, last night was so weird that just a plane appeared in my backyard. He's got to tell them it's his plane. Yes, Your Honor, and the lawyer and Mr. DiMartini both testified that when they left that meeting with the DEA agents, he was under strict instructions not to discuss the matter. And so in his testimony in the record is that I said it was my plane because that would require far less explanation than if I said I repossessed the plane and what that would entail, and I believe that's in the record. So I don't believe that this is a case of harmless error. And I'll ask the question. May I address it the old way? We're going to do it, Senior. I mean, let's go over it a bit. I see him up. Mr. Jesser was kind enough to cede some of his time. Thank you very much. Thank you, Your Honor. Thank you. It is an interesting case. That's why they pay you the big bucks. I thought that might be why you picked the case for it, that it was, in fact, interesting and entertaining. Well, it's interesting. Thanks.